**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

MAURICE GREEN, PLAINTIFF
ADC #127796

v. 2:13CV00050-SWW-JTK

CONNIE DAWSON, et al. DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

**DISPOSITION**

## I. Introduction

Plaintiff Green is a state inmate incarcerated at the Delta Regional Unit of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983, alleging Defendants acted with deliberate indifference to his serious medical needs by requiring him to perform job tasks in violation of his medical restrictions, while he was incarcerated at the East Arkansas Regional Unit (EARU). Plaintiff asks for monetary relief (Doc. No. 3).

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 28), to which Plaintiff has responded (Doc. No. 35).

## II. Amended Complaint

Plaintiff alleges that from March, 2012, until December 31, 2012, Defendant Dawson ignored his medical script (shown to her on numerous occasions) and required him to sweep, mop, and push 100-200 pound carts. (Doc. No. 6, p. 1.) He further alleges Defendant Petty called him to work on

December 17, 2012, and made him wash the hot box and pots and pans, despite the fact that he advised her of his script. (Id.) When his hands swelled, she told him to place a sick call request. (Id., p. 2.) Defendant Mean[1] called him into work on September 12, 2012, and even though Plaintiff showed him the medical script, Mean required him to sweep and mop, which caused his hands to swell. (Id.) Finally, Plaintiff claims that Warden Ball assigned him to the kitchen duty, knowing of his medical restrictions concerning jobs requiring full grip of the hands. (Id.)

## III. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Exhaustion

---

[1]Identified as "Ming" in Plaintiff's complaint.

Defendant Mean states he should be dismissed because Plaintiff failed to exhaust his administrative remedies with respect to his claims against him. The grievance policy in effect at the time of the incidents at issue was Administrative Directive (AD) 12-16, which requires inmates to be specific as to personnel involved when filing their grievances. (Doc. No. 30-4, p. 5.) Plaintiff attached four grievances to his Original Complaint as evidence of his exhaustion (Doc. No. 2, pp. 8-19.) None of those four grievances name or refer to Defendant Mean. In grievance EA 13-00032, Plaintiff complained that Dawson required him to mop and sweep in violation of his medical restrictions. (Doc. No. 30-5.) In grievance EA 12-02067, he complained that Petty ordered him to sweep, mop, and wash pots and pans (Doc. No. 30-6); he repeated these allegations against Petty and added allegations against Ball in grievance EA 12-02070 (Doc. No. 30-7.) Finally, in grievance EA 12-2068, Plaintiff complained again that Defendant Dawson ignored his medical script on December 18, 2012, and failed to notify the kitchen staff of his limitations. (Doc. No. 30-8.)

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741 (2001). In addition, the United States Court of Appeals for the Eighth Circuit held in Chelette v.

Harris, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them. Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000), quoting Castano v. Nebraska Dep't of Corrections, 201 F.3d 1023, 1025 (8th Cir. 2000). In Johnson v. Jones, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory." 340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original). Finally, in Jones v. Bock, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." 549 U.S. at 218.

The United States Court of Appeals for the Eighth Circuit recently ruled that if prison officials decide a procedurally-flawed grievance on the merits, they effectively waive the argument that an inmate failed to exhaust because he did not comply with the grievance procedures. In Hammett v. Cofield, an inmate relied on grievances which were not exhausted or which were filed outside of mandatory time limits. 681 F.3d 945 (8th Cir. 2012). The Court decided, however, that the "PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." Id. at 947. This line of reasoning was extended to an exhausted grievance filed by an inmate who failed to comply with prison procedures requiring that defendants be specifically named, in Bower v. Kelley, 494 Fed.Appx. 718, 2012 WL 6199266 (8th Cir. 2012).

In this case, although Plaintiff specifically named several individuals in his grievances, he did not name or refer to Defendant Mean, and he does not claim otherwise in his Response to

Defendants' Motion (Doc. No. 35). Therefore, the Court finds that he failed to exhaust his administrative remedies with respect to his claims against him, and that he should be dismissed from this action, without prejudice.

**B. Official Capacity**

The Court agrees with Defendants that sovereign immunity requires dismissal of Plaintiff's monetary claims against them in their official capacities. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997).

**C. Qualified Immunity**

Defendants Dawson, Petty, and Ball also move for summary judgment based on the doctrine of qualified immunity. Qualified immunity protects officials who acted in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether Defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were

unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).[2] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). "In the work assignment context, prison officials are deliberately indifferent when they 'knowingly ... compel convicts to perform physical labor ... which is beyond their strength, or which constitutes a danger to their ... health, or which is unduly painful.'" Choate v. Lockhart, 7 F.3d 1370, 1374 (8th Cir. 1993), quoting Ray v. Mabry, 556 F.2d 881, 882 (8th Cir. 1977) (per curiam) (other citations omitted.) Finally, deliberate indifference "requires a showing that [Defendants] knowingly compelled [Plaintiff] to perform physical labor that was beyond his strength, dangerous to his health, or unduly painful." Mays v. Rhodes, 255 F.3d 644, 649 (8th Cir. 2001).

According to Plaintiff's medical records, when he was first admitted to the ADC in March, 2012, he reported that he had been shot with a shotgun, and that pellets remained embedded in his hands, arms, legs, and buttocks, causing constant pain. (Doc. No. 30-2.) At that time, he was assigned to a medical restriction of M-2. (Id.) On June 4, 2012, he was given a restriction which

---

[2]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson v. Correctional Medical Services, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

prevented any work assignment requiring full grip of his right and left hands, noting very little use of his hands. (Doc. No. 30-3.) His medical records show that he was seen and provided medications for pain, on June 23, 2012, July 6, 2012, and August 8, 2012 (Doc. No. 30-13, pp. 1-3.) In addition, he was seen on August 14, 2012, at which time the nurse noted that Plaintiff "takes Nortriptyline and Meloxicam for pain, has restrictions. Don't know what more I can do for IM." (Doc. No. 30-12.) He was seen again for pain on November 5, 2012 (Doc. No. 30-13.)

1. Defendant Ball

According to his declaration, Ball is Deputy Warden of EARU, and a member of the classification committee. (Doc. No. 30-9.) Plaintiff was assigned a classification of M-2, and given restrictions relieving him from assignments requiring a full grip. (Id.) In a prior lawsuit Plaintiff filed, he admitted that he told the committee he could wash tables; based on that statement, he was assigned to work in the kitchen.[3] (Id.) Ball had no reason to believe that this assignment would violate his restrictions, and Plaintiff was not prevented from using the grievance and sick call processes. (Id.)

However, Plaintiff claims in Response that Ball was aware of his assignment to the kitchen because of his involvement with the classification committee, and should not be dismissed because Defendants required him to perform work which was medically restricted.

Absent allegations that Ball knew that Plaintiff was required to perform work in violation of his restrictions, and then failed to remedy such, the Court finds Ball is entitled to qualified immunity. It appears to the Court that Plaintiff is suing Ball based on his supervisory capacity and a supervisor

---

[3]Plaintiff's lawsuit against Ball and Dawson in Green v. Ball, et al., 2:12CV00120-HDY, was dismissed without prejudice on December 11, 2012, for failure to exhaust his administrative remedies.

can not be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). While Ball does not dispute that he knew Plaintiff was assigned to the kitchen, Plaintiff provides no allegations or evidence to show that Ball was aware that Plaintiff was required to perform tasks in violation of his restrictions. Furthermore, Plaintiff does not dispute Ball's statement that Plaintiff did not have a no-work restriction, and therefore, he was assigned a job. Nor does he dispute that he told the committee he could work in the kitchen wiping tables. Given such facts, no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right by Defendant Ball.

2. Defendant Dawson

In her response to Plaintiff's grievance EA 13-00032, Dawson stated that Plaintiff initially was assigned to the front serving line in the kitchen, but when she learned about his restrictions, she moved him to wiping tables. (Doc. No. 30-10.) At one point when Plaintiff asked permission to go to the Infirmary, she told him to return to his barracks and submit a sick call request. (Id.) In addition, in response to grievance EA 12-2068, Dawson stated that Green was assigned to kitchen clean-up on Petty's night shift, wiping walls and shelves. (Doc. No. 30-11.)

Plaintiff claims Dawson was present at the classification committee hearing in March, 2012, and therefore, aware of Plaintiff's medical restrictions. Although Plaintiff claims Dawson made him work against his script, he does not allege any specific incidents of her involvement, other than the two mentioned in the grievances he filed against her. Therefore, Plaintiff provides no evidence that

on these occasions, or any others, Defendant Dawson acted with deliberate indifference to his medical needs, or knowingly compelled him to perform tasks that she knew could hurt him or result in injury. See Mays v. Rhodes, 255 F.3d at 649. Given such facts, no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

3. Defendant Petty

Plaintiff alleges Defendant Petty forced him to wash pots and pans on one occasion, on December 17, 2012. However, in her response to his grievance, Petty stated that she did not order Plaintiff to wash dishes; rather, he volunteered to help and could work at his own pace during his eight-hour shift. (Doc. No. 30-15.) Even assuming Plaintiff's allegation to be true, the Court finds that a one-time requirement of washing pots and pans does not support a finding that Defendant Petty knowingly compelled him to perform a task she knew could hurt him or result in injury. In Willis v. Folsom State Prison Med. Staff, the Court held that "plaintiff's allegation that on a single occasion defendant Vasquez compelled him 'to do harsh labor without breaks' is insufficient to raise a genuine issue of material fact on the question whether Vasquez subjectively knew of and disregarded an excessive risk to plaintiff's health." No. 2:10-cv-1631KJM ACP, 2014 WL 841296 (E.D.CA 2014). Therefore, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right by Defendant Petty.

In conclusion, upon close review of the evidence in support of the Summary Judgment Motion, and absent material disputes of facts raised by the Plaintiff, the Court finds that Defendants acted reasonably under the circumstances and did not violate Plaintiff's clearly-established

constitutional or statutory rights.

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1) Defendants' Motion for Summary Judgment (Doc. No. 28) be GRANTED.

2) Plaintiff's allegations against Defendant Mean be DISMISSED without prejudice.

3) Plaintiff's allegations against Defendants Ball, Dawson, and Petty, be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 29th day of May, 2014.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE